[Cite as *Voleck v. Tennant*, 2019-Ohio-4230.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

VIRGINIA VOLECK ET AL.,

Plaintiffs-Appellants/Cross-Appellees,

v.

MARY BETH SHEBA TENNANT ET AL.,

Defendants-Appellees/Cross-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 BE 0036**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CV 0022

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in Part. Reversed in Part.

---

*Atty. Theodore Tsoras*, Tsoras Law Office, P.O. Box 150, 54491 Lysien Road, Powhatan Point, Ohio 43942, for Plaintiffs-Appellants/Cross-Appellees, and

*Atty. Ryan Regel* and *Atty. Jordan Croucher*, Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793, for Defendants-Appellees/Cross-Appellants.

Dated:
October 10, 2019

**DONOFRIO, J.**

**{¶1}** Plaintiffs-appellants/cross-appellees, Virginia and John Voleck, appeal the Belmont County Common Pleas Court's judgment granting a motion in limine and granting a directed verdict during a jury trial in favor of defendants-appellees/cross-appellants, Mary Beth and Carl Tennant. The Tennants cross-appeal the trial court's judgment denying their motion for summary judgment.

**{¶2}** On September 14, 1988, Mary Beth purchased 3.81 acres of real property in Powhatan Point, Ohio (the property). This purchase was financed in part by her sister and brother-in-law, the Volecks. The Volecks gave Mary Beth $10,000 towards the purchase of the property. The nature of the $10,000 the Volecks gave to Mary Beth is in dispute.

**{¶3}** According to the Volecks, they had an oral contract with Mary Beth in which they would receive a portion of the property. The Volecks would provide Mary Beth with $10,000 and co-sign a mortgage on the property with Mary Beth. In exchange, the Volecks would receive 2.424 acres of the property. According to the Tennants, the $10,000 from the Volecks was either a loan that the Volecks eventually forgave or a gift to Mary Beth.

**{¶4}** In January of 1989, the Volecks hired Steve Hill to perform a survey of the property in order to allocate which portion would belong to them. In 2008, the Volecks hired a contractor to inspect the property for the purpose of building a house on their portion. Other than these two acts, the Volecks did not take any steps towards constructing a house on the property. The Volecks did not intend to build a house on their part of the property until 2013 when John was scheduled to retire

**{¶5}** The Tennants did not transfer any part of the property to the Volecks. In August of 2013, the Tennants explicitly told the Volecks they would not transfer any portion of the property.

**{¶6}** The Volecks filed this action on January 23, 2017 asserting claims of: breach of oral contract, promissory estoppel, unjust enrichment, and intentional infliction of emotional distress. They sought specific performance on the oral contract, punitive damages, compensatory damages, and incidental damages.

**{¶7}** The Tennants filed an answer and a counterclaim. Relevant to this appeal, their answer asserted the affirmative defenses of statute of frauds and statute of limitations. The Tennants' counterclaim set forth a cause of action for slander.

**{¶8}** After discovery, both parties filed motions for summary judgment. The Tennants' motion argued that the Volecks' contractual and quasi-contractual claims were all barred by either the statute of frauds or the statute of limitations. The Tennants argued that the Volecks' contractual claims were based on an oral contract for land, which violated the statute of frauds. They also argued that, if a contract existed, it was breached in 1988 and any claim related to the contract was barred by the statute of limitations.

**{¶9}** The Volecks' response to the Tennants' motion for summary judgment argued that the statute of frauds did not bar their breach of contract claim under the doctrine of part performance because they gave Mary Beth $10,000 in order to purchase the property. The Volecks also argued that the six-year statute of limitations pursuant to R.C. 2305.07 did not expire because the Tennants did not breach the contract until August of 2013, when they told the Volecks that no part of the property would be transferred.

**{¶10}** The Volecks' motion for summary judgment argued that the Tennants' slander claim was barred by the one-year statute of limitations. The Tennants opposed this motion arguing that their counterclaim was not time barred.

**{¶11}** In a judgment entry dated January 8, 2018, the trial court sustained the Volecks' motion for summary judgment on the slander counterclaim. The trial court denied the Tennants' motion for summary judgment. Regarding the statute of limitations, the trial court held that the Volecks' contractual claims accrued in August of 2013.

**{¶12}** Prior to trial, both parties filed motions in limine. Relevant to this appeal, one of the Tennants' motions in limine sought to exclude the testimony of Dr. Homayoun Hajiran, the Volecks' damages expert, on the basis that the Volecks did not provide them with Dr. Hajiran's curriculum vitae (CV). Alternatively, the Tennants sought to limit Dr. Hajiran's testimony to damages sustained after August 13, 2013 (the date the Volecks

claim the oral contract was breached). The trial court granted this motion and held that the Volecks' damages on their breach of contract claim began on August 13, 2013.

{¶13} The matter proceeded to a jury trial. During the Volecks' case-in-chief, they presented evidence that an oral contract existed between them and Mary Beth. Under the terms of the contract, the Volecks would give Mary Beth $10,000 to purchase the property and co-sign a mortgage on the property with Mary Beth. In exchange, Mary Beth would give the Volecks 2.424 acres of the property. John denied that the $10,000 was a loan or a gift. On cross-examination, Virginia testified she did not have a conversation with Mary Beth about the property's oil and gas rights.

{¶14} After the Volecks rested, the Tennants moved for a directed verdict on three grounds. Relevant to this appeal, the Tennants argued that the trial court should limit the Volecks' relief on their contractual claims to the surface area and not include an oil and gas royalty. The trial court granted this directed verdict on the basis that there was no evidence that oil and gas rights were included in the original contract's terms. The Volecks objected to this ruling arguing that it is the seller's responsibility to reserve oil and gas rights in a land transaction. The trial court overruled that objection and held that the contractual claims would be limited to a claim for the surface rights.

{¶15} After the directed verdict motion, the Tennants presented their case-in-chief. The Tennants' witnesses focused their testimony on the negative relationship between Virginia and Mary Beth. The two are sisters who have had a negative relationship for several years. Mary Beth also testified that the $10,000 the Volecks gave her was a gift and the property always belonged to her.

{¶16} After closing arguments, the trial court instructed the jury on three affirmative defenses: laches, waiver, and failure to mitigate. The Tennants did not object to the jury instructions.

{¶17} The jury found that there was an oral contract for the purchase of 2.424 acres of property between the Volecks and Mary Beth and Mary Beth breached said contract. The jury awarded the Volecks specific performance of the contract but denied the Volecks monetary damages. The jury found against Virginia on her intentional infliction of emotional distress claim.

**{¶18}** The trial court journalized the jury's findings on May 17, 2018 and ordered the Tennants to convey 2.424 acres of the property to the Volecks. The Volecks timely filed a notice of appeal on June 13, 2018 and now raise two assignments of error. The Tennants timely filed their cross-appeal on June 14, 2018 and raise two cross-assignments of error.

**{¶19}** We will begin with the Volecks' assignments of error. Their first assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE APPELLANTS WERE REQUIRED TO SHOW THE PARTIES FULLY INTENDED THE MINERAL RIGHTS TO BE INCLUDED IN THE CONVEYANCE OF THE REAL PROPERTY WHEN THEY ENTERED INTO AN ORAL AGREEMENT IN 1988.

**{¶20}** It must be noted that this assignment of error is misleadingly titled. In this assignment of error, the Volecks argue that the trial court limited their claim for damages in its rulings on motions in limine. They argue that the issue of damages is substantive in nature and motions in limine are limited to only evidentiary issues.

**{¶21}** Decisions granting or denying motions in limine are reviewed for abuse of discretion. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶22}** "As related to trial, a motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury." *State v. Charley*, 7th Dist. Belmont No. 05 BE 34, 2007-Ohio-1108, ¶ 49 quoting *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986).

**{¶23}** "[A] motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *Grubb*, 28 Ohio St.3d at 201–202. In limine rulings are not final; they can be revisited

and changed during the course of a trial. *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013–Ohio–5682, ¶ 173. Failing to lodge a contemporaneous objection to the disputed evidence during trial waives review of the purported error on appeal. *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996).

**{¶24}** The trial court's rulings on summary judgment held that the Volecks' contractual claims accrued in August of 2013. The Tennants' motions in limine sought to exclude, among other things, the testimony of Dr. Hajiran on the basis that the Volecks did not provide a copy of Dr. Hajiran's CV to them during discovery. Alternatively, the Tennants sought to limit Dr. Hajiran's testimony to damages occurring on or after August 13, 2013 on the basis that the trial court's summary judgment rulings held that the Volecks' causes of action relating to the property accrued in August of 2013.

**{¶25}** The Volecks' arguments in this assignment of error lack merit for two reasons. First, they did not properly preserve the ruling on motions in limine for appellate review. *Hill* requires a contemporaneous objection to the disputed evidence at trial. The record shows that the Volecks did not object to any limits to Dr. Hajiran's testimony at trial.

**{¶26}** Second, the trial court's ruling limiting Dr. Hajiran's testimony concerned a proper evidentiary matter for a motion in limine. The trial court held that the Volecks' contractual claims accrued in August of 2013. This would make testimony from Dr. Hajiran on damages prior to August of 2013 irrelevant pursuant to Evid.R. 402 at the trial.

**{¶27}** Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Evidence that is not relevant is not admissible. Evid.R. 402. The Volecks do not contest the trial court's ruling that their contractual and quasi-contractual claims accrued in August of 2013. Because the trial court held that the Volecks' contractual and quasi-contractual claims accrued in and around August of 2013, any damages the Volecks sustained before August of 2013 would be irrelevant to any issue at trial. Therefore, the trial court did not abuse its discretion when it granted the Tennants' motion in limine concerning Dr. Hajiran's testimony.

**{¶28}** Accordingly, the Volecks' first assignment of error lacks merit and is overruled.

**{¶29}** The Volecks' second assignment of error states:

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DIRECTED A VERDICT AND HELD THE APPELLANTS AS A MATTER OF LAW HAD NO CLAIM TO ANY OF THE OIL AND GAS CONCERNING THE 2.42 ACRES OF PROPERTY.

**{¶30}** The Volecks argue that the agreement between them and Mary Beth included all rights to their portion of the property, including oil and gas rights. They argue that the trial court's directed verdict in favor of the Tennants on the issue of oil and gas rights was error.

**{¶31}** A trial court's decision granting a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Carter v. R & B Pizza Co., Inc.*, 7th Dist. Jefferson No. 09JE34, 2010-Ohio-5937, ¶ 15. The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4):

When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

**{¶32}** During the Volecks' case-in-chief, John testified that, in 1988, Mary Beth offered to give the Volecks land in exchange for $10,000 and co-signing on a loan. The Volecks accepted Mary Beth's terms. Shortly before the Volecks accepted, the parties went to the property and determined how much of the property the Volecks would receive. Approximately four months after the agreement, the Volecks hired Steve Hill to survey the property. Mary Beth was aware of Hill's survey and the Volecks provided her with a copy of the survey. Mary Beth was also aware that the Volecks did not intend to build a house on their portion of the property until May 17, 2013; the date John Voleck was

scheduled to retire. On cross-examination, Virginia testified that she did not discuss the property's oil and gas rights with Mary Beth.

**{¶33}** The Volecks cite *Lighthorse v. Clinefelter*, 36 Ohio App.3d 204, 521 N.E.2d 1146 (9th Dist.1987). In *Lighthorse*, the Ninth District held that minerals, oil, and gas are considered "realty" until they are physically severed from the land. *Id.* at 205-206 citing *Kelley v. Ohio Oil Co.*, 57 Ohio St. 317, 49 N.E. 399 (1897).

**{¶34}** Similarly, this court has held that un-severed minerals are real property; until they are severed at which point they become personal property. *Miller v. Cloud*, 7th Dist. Columbiana No. 15 CO 0018, 2016-Ohio-5390, ¶ 57 citing *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 113 N.E.2d 865 (1953). Petroleum oil is considered a mineral and as long as it is in the ground, it is part of the realty. *Id.*

**{¶35}** In addition, there is no evidence that the property's oil and gas rights were excepted or reserved. Oil and gas rights must be excepted or reserved in a title transaction, otherwise those rights transfer with the surface. See *Porterfield v. Bruner Land Company, Inc.*, 7th Dist. No. 16 HA 0019, 2017-Ohio-9045, ¶ 27. Based on the aforementioned case law, the property's oil and gas are part of the realty. Construing the evidence most strongly in favor of the Volecks, reasonable minds could conclude that the Tennants intended to convey 2.424 acres of real property, including the associated oil and gas rights, to the Volecks.

**{¶36}** In response, the Tennants cite *Schlaegel v. Howell*, 2d Dist. Champaign No. 2014-CA-37, 2015-Ohio-4296, for the principle of contract law that, to be enforceable, there must be a "meeting of the minds as to the essential terms of the contract." *Id.* at ¶ 17 quoting *Minster Farms Coop. Exchange Co. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-2159, 884 N.E.2d 1056. The Tennants argue that there was never a meeting of the minds in this case as to the property's oil and gas rights.

**{¶37}** The Tennants argument lacks merit. Viewing the evidence most strongly in favor of the Volecks, reasonable minds could conclude that an oral contract for the sale of land existed in this case. The terms of the contract were that the Volecks would give Mary Beth $10,000 and co-sign on a loan in exchange for 2.424 acres of the property. As there was no evidence presented that the oil and gas rights were excepted or reserved from the property, the oil and gas rights are considered part of the real property.

Case No. 18 BE 0036

Therefore, reasonable minds could conclude that the oil and gas rights were part of the transaction and there was a meeting of the minds as to that term.

{¶38} Accordingly, the Volecks' second assignment of error has merit and is sustained.

{¶39} We turn now to the Tennants' cross-assignments of error. Their first cross-assignment of error states:

> THE TRIAL COURT ERRED IN DENYING APPELLEES [sic] MOTION FOR SUMMARY JUDGMENT BY HOLDING THAT THE ALLEGED ORAL CONTRACT BETWEEN APPELLANTS AND APPELLEES WAS NOT BARRED BY THE STATUTE OF FRAUDS WHICH NEGATES THE ENFORCEABILITY OF AN ORAL CONTRACT FOR THE CONVEYANCE OF REAL ESTATE.

{¶40} The Tennants argue that because this case concerns an oral contract for land, it is barred by the statute of frauds. They also argue that the Volecks did not put forth sufficient evidence to satisfy the doctrine of part performance.

{¶41} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

{¶42} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Case No. 18 BE 0036

**{¶43}** Since there was a full trial on the merits in this case, the denial of a motion for summary judgment is generally not reviewable. See *Calvary S.P.V.I., L.L.C. v. Krantz*, 8th Dist. Cuyahoga No. 97422, 2012-Ohio-2202, ¶ 9, *see also A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549, ¶ 19. But when the denial of a motion for summary judgment is based on a pure question of law and that question of law has an impact on the case, then the denial of summary judgment may be reviewed. *Bobb Forest Products, Inc. v. Morbark Industries, Inc.*, 151 Ohio App.3d 63, 783 N.E.2d 560, ¶ 40 (7th Dist.2002).

**{¶44}** During summary judgment proceedings, there was a dispute as to whether the statute of frauds barred the Volecks' claims. The Tennants argued that summary judgment in their favor was proper because the Volecks' claims concerned an oral contract for land and were therefore barred by the statute of frauds. The Volecks argued that an exception to the statute of frauds, the doctrine of part performance, applied and that their claims were not barred.

**{¶45}** The trial court held that the Volecks provided sufficient evidence to support their argument that they partially performed on the oral contract for land and denied the Tennants' motion for summary judgment on the statute of frauds issue. The matter then proceeded to a jury trial on the issue of whether the Tennants breached the oral contract.

**{¶46}** Determining whether the trial court properly ruled on the issue of statute of frauds during summary judgment in this case would require an analysis of the facts before the trial court during the summary judgment proceedings. Since there was a full trial on the merits, the Tennants may only appeal the denial of a motion for summary judgment on a pure issue of law that has an impact on the case. Deciding whether partial performance was met in this case requires a factual analysis and, therefore, is not a pure question of law.

**{¶47}** Accordingly, the Tennants' first cross-assignment of error lacks merit and is overruled.

**{¶48}** The Tennants' second cross-assignment of error states:

THE TRIAL COURT ERRED IN DENYING DEFENDANTS [sic] MOTION FOR SUMMARY JUDGMENT BY HOLDING THE SIX (6) YEAR STATUTE OF LIMITATIONS FOR THE CAUSES OF ACTION FOR

BREACH OF ORAL CONTRACT, PROMISSORY ESTOPPEL, UNJUST ENRICHMENT, AND SPECIFIC PERFORMANCE DID NOT ACCRUE UNTIL AUGUST OF 2013.

{¶49} The Tennants argue that the Volecks' contractual and quasi-contractual claims began to accrue in 1988 when Mary Beth acquired the property but did not deed any portion of it to the Volecks. They argue that because the Volecks' contractual and quasi-contractual claims accrued in 1988, those claims are barred by the six-year statute of limitations pursuant to R.C. 2305.07.

{¶50} First, we must address whether we have the ability to review this assignment of error. As previously stated, because there was a full trial on the merits, the Tennants may only appeal the trial court's denial of summary judgment on pure issues of law that have an impact on the case.

{¶51} "Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law." *Schmitz v. National Collegiate Athletics Association*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 11.

{¶52} During summary judgment proceedings, there was a factual dispute as to when the Volecks' causes of action accrued. The Volecks argued that their causes of action accrued in August of 2013 while the Tennants argued that the causes of action accrued in 1988. The Tennants take issue with the trial court's ruling that the Volecks' causes of action accrued in August of 2013; they do not take issue with the trial court's application of the six-year statute of limitations pursuant to R.C. 2305.07. Because the Tennants are appealing the trial court's resolution of a factual dispute, this issue is not a pure question of law. As there was a full trial on the merits in this case, we cannot review the trial court's denial of the motion for summary judgment regarding the statute of limitations in this case.

{¶53} Accordingly, the Tennants' second cross-assignment of error lacks merit and is overruled.

{¶54} For the reasons stated above, the trial court's denial of the Tennants' motion for summary judgment and the trial court's rulings on motions in limine are hereby

affirmed.  The trial court's directed verdict on the issue of oil and gas rights in favor of the Tennants is hereby reversed.  Judgment is hereby entered in favor of the Volecks on the issue of oil and gas rights for their 2.424 acres of the property.


Robb, J., concurs.
D'Apolito, J., concurs.

Case No. 18 BE 0036

---

For the reasons stated in the Opinion rendered herein, the Tennants' cross-assignments of error are overruled. The Volecks' first assignment of error is overruled. The Volecks' second assignment of error is sustained. The trial court's directed verdict on the issue of oil and gas rights in favor of the Tennants is hereby reversed. The Volecks are awarded the oil and gas rights to the 2.424 acres of real property at issue in this case. The remainder of the trial court's judgment is affirmed. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed in part and reversed in part. Costs to be taxed against the Tennants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**